IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LEE M. SIMMONS,

                    Plaintiff,                              **8:13CV98**

        vs.

UNITED STATES OF AMERICA, et. al;              **MEMORANDUM AND ORDER**

                    Defendants.

The following motions are pending before me:

- Plaintiff's Motion to Complete or Supplement Record, (Filing No. 65);
- Defendants' Motion for Protective Order, (Filing No. 76); and
- Plaintiff's Motion to Supplement Defendant's Brief, (Filing No. 89).

For the reasons discussed below, the motion to supplement Defendant's brief will be denied. And the motions for protective order and to complete or supplement the record will be granted in part and denied in part as set forth in this order.

BACKGROUND

On March 25, 2013, Plaintiff Lee Simmons filed a Complaint (Filing No. 1) against the Defendants "for the reason that the [National Park Service "NPS"] has acted improperly and contrary to law with respect to establishment of boundaries and management of the Niobrara Scenic River." (Filing No. 1, at CM/ECF p. 3). Simmons and his family own land north of the Niobrara River and south of Highway 12 near Berry Bridge, represented on the defendants' area maps in the "Sparks" and "Cornell Dam" Quadrants. Simmons claims there are no, or only insignificant, Outstandingly Remarkable Values ("ORVs") for the Niobrara on his property, and therefore Defendants improperly designated a portion of his land as within the boundaries of the Niobrara

National Scenic River (Niobrara NSR).   Plaintiff seeks an order declaring the right of Simmons to require NPS to:

    (a)     exercise its statutory duty to administer the Niobrara Scenic River by properly establishing detailed boundaries;

    (b)     identify the precise location of ORV's on Simmons property;

    (c)     properly address user capacities; and

    (d)     create sufficient procedures in a comprehensive fire management plan.

(Filing 1, ¶ 36.)

Defendants filed an Answer on July 15, 2013.  They filed a certified copy of the "Administrative Record for the 2007 General Management Plan and the associated Environmental Impact Statement for the Niobrara National Scenic River, Nebraska, consisting of the Declaration of Sändra Washington, Exhibits A and B, and three DVDs" on September 5, 2013.  (Filing No. 24).  The Administrative Record was supplemented on January 31, 2014.  (Filing Nos. 37 and 38).

The government moved to dismiss and for a protective order on January 17, 2014, stating Plaintiff lacks standing to assert claims on behalf of anyone other than himself and he is not entitled to broad discovery.  (Filing No. 32).  The plaintiff countered with evidence that he was "singled out" and retaliated against for his comments and opposition to the Defendants' plans and management of the Niobrara NSR project.  Simmons requested discovery to investigate whether the bias of NPS officials against Simmons caused NPS to draw boundaries for the Niobrara NSR based, at least in part, on who owned the land rather than whether ORVs were associated with that land.  (Filing No. 39, at CM/ECF p. 20.)

On July 1, 2014, Judge Kopf ruled:

> Simmons has made a sufficient showing to depose Hedren and Schneider
> and other persons who have knowledge concerning the placement of the
> boundary lines on Simmons' property. The court therefore will allow
> Simmons to take up to 5 depositions for the limited purpose of obtaining
> evidence that NPS officials acted in bad faith. The defendants, if they so
> choose, may depose Simmons about his proposed testimony "regarding
> how he was treated." . . .  No other discovery will be permitted, nor will
> initial disclosures be required.

(Filing No. 45, at CM/ECF p. 23).

On October 29, 2014, the plaintiff deposed Paul Hedren, the Superintendent for the Niobrara and Missouri National Scenic Riverway from January 1996 until his retirement in 2007.   The government deposed the plaintiff.  No other depositions have been taken to date.

To develop the General Management Plan for the Niobrara NSR, NPS used geographic information systems (GIS) for "inputting, storing, manipulating, analyzing and outputting georeferenced data."   The "power of a GIS is its ability to analyze location, features or objects (such as a stream), and feature characteristics (such as water quality, direction of flow), in relation to other locations, features, and their characteristics." (Filing No. 81-5) (citing www.nps.gov/gis/intro.html).  GIS "shape files" were used to create maps depicting the Niobrara River, ORVs along that river, and the proposed and final boundary of the Niobrara NSR.

The parties' discovery disputes were first presented to the undersigned magistrate judge on January 23, 2015.  After conferring with the parties and reviewing five exemplar maps from the administrative record, I expressed concern that Judge Kopf's and NPS' ability to review the maps may not be equivalent if Judge Kopf judicially reviews a paper copy (with no computer-assisted ability to pan or zoom at a specific area) while the NPS' review was conducted using a computer program.  I ordered the government to disclose

which of the almost 100 maps of record were actually relied upon by NPS in making the agency's decision on the location of ORV's for determining the final boundary of the Niobrara NSR.   I further ordered that "[i]f maps were viewed in electronic format," the defendants must advise the court as to whether the maps can be added to the Administrative Record in that same electronic format, what hardware, software, and expertise would be needed to review the maps electronically, and the estimated cost for that review.   Defendants were further ordered to "provide Plaintiff's counsel with the name and contact information of a person who could be deposed by Plaintiff regarding such requirements and costs." (Filing No. 59).

On January 29, 2015, counsel met with me in chambers to review the maps and further explain the notations and writing on them.   Defense counsel explained that to electronically view the "the underlying GIS shape files used by NPS staff for the Niobrara Scenic River would require special software and expertise;. . . the software used during the 2002-2003 time period at NPS would have been ArcView version 3.x; and the commercial software license for ArcView software would cost approximately $1,000 per license." (Filing No. 84-6).   The maps are large; the print is small.   And ORVs, handwriting, and other markings are difficult to see and decipher.   The court instructed the government to determine precisely who decided on the location of the Niobrara NSR boundaries, and find out if they made those decisions based on a paper or an electronic review of the maps.

By then, the plaintiff had deposed Hedren.  The government further identified:

February 5, 2015; (Filing No. 84-6, at CM/ECF p. 2).

> Stephen Wilson, Data Manager/GIS Specialist for the Northern Great Plains Inventory and Monitoring Network, NPS, to depose "regarding the cost and requirements of the GIS shape files information for the Niobrara National Scenic River maps as requested in the Court's January 23, 2014."

February 10, 2015; ([Filing No. 84-2](Filing No. 84-2))

David Given (acting in Quintana's absence), Deputy Regional Director for the Midwest Region of NPS from 1995 through 2010 (when he retired) and involved in the review and approval process for the 2007 GMP/EIS for the Niobrara River.

February 11, 2015; ([Filing No. 84-1](Filing No. 84-1))

Ernest Quintana, Regional Director for the Midwest Region of the NPS from July 13, 2003, through February 2011 (when he retired), and involved in the review and approval process for the 2007 GMP/EIS for the Niobrara River.

On April 13, 2015, the government disclosed the following additional persons involved in creating the General Management Plan for the Niobrara NSR.

| | |
|---|---|
| Meeting attendees: | David Given, former Deputy Regional Director;  Al Hutchings, former NPS Associate Regional Director; Sandra Washington, former Chief of Planning and Compliance, NPS Midwest Regional Office; Sharon Miles, former Outdoor Recreation Planner, NPS Midwest Regional Office; and Stuart Schneider, former NPS Chief Ranger for the Niobrara National Scenic River |
| Map developers: | Stephen Wilson and Carmen Thomson of NPS; and Dr. Marc Albrecht at the University of Nebraska-Kearney on GIS files. |
| Map preparation: | Anne Vawser with NPS Midwest Archeological Center. |
| Map completion: | Schemmer Associates:  Received the final GIS boundary file from NPS to complete their maps |
| ORV field work: | Chief Ranger Stuart Schneider and former Park Ranger Darryn Witt |
| ORV planning: | Former Chief of Operations Phil Campbell, former Resource Management Specialist Lauren Johnson, former Resource |

Management Specialist Wayne Werkmeister, and Leslie Peterson and Linda Ray with the NPS Denver Service Center

GMP consultation: John Haubert, former Outdoor Recreation Planner, NPS in Washington, D.C., and Michael Madell, former NPS Regional Environmental Coordinator

Formal comment: Received from former NPS Regional Director William Schenk

Later involvement: (incidental only) Michael Doherty, Park Ranger and Witts' successor.

(Filing No. 67-8)

The following day, April 14, 2015, the plaintiff filed a motion to complete or supplement the administrative record with the following:

(1)     Contents of Geographic Information System (GIS) files or other electronically stored information including shape files to the extent used or consulted by people (upon whom decision-makers for Defendants relied) in identifying the location of the Outstandingly Remarkable Values (ORVs) for the Niobrara; and

(2)     Email, computer file or other document relating to or purporting to relate to property owned or managed by Simmons or his family adjacent to or near the Niobrara between 2002 and March 26, 2007, including any document:

(a)     sent to or received by Paul Hedron, Phil Campbell, Stuart Schneider, Carmen (Thomsen) Blausey, Darryn Wit, Stephen Wilson, or Wayne Werkmeister; or

(b)     intentionally removed or rejected by Defendants in connection with actions taken in compiling the Administrative Record in this action.

6

(Filing No. 65).  Plaintiff served a 30(b)(6) notice to depose the United States on these topics, and requested NPS to "produce copies in advance of, and bring the following original documents and tangible things to, the deposition (1) Niobrara electronic files; and (2) Simmons information."   (Filing No. 70, at CM/ECF p. 2).   Plaintiff further requested an order requiring the government to fully comply with my order entered on January 23, 2015; specifically, to require Defendants to:

> (a)      determine what specific electronic maps were viewed by "people upon whom the decision makers [for Defendants] relied" on the location of ORVs;

> (b)      provide the Court (and Simmons' counsel) with "requirements needed to view" any such maps in electronic format and the "expected costs and expertise required to view" for same; and

> (c)      provide Simmons' counsel "with the name and contact information of a person who could be deposed by [Simmons] regarding such requirements and costs.

(Filing No. 65, at CM/ECF p. 2).

On April 14, 2015, the plaintiff also served notice of its intent to depose, (Filing No. 69), and to serve a document production subpoena on Schemmer Associates, Inc. (Filing No. 68).  Schemmer Associates received the final GIS boundary file from NPS to complete the Niobrara NSR maps.  The proposed subpoena commanded production of:

> 1.      Geographic information system (GIS) files or other electronically stored information including shape files that show the location of all Outstandingly Remarkable Values (ORVs) designated within the final boundary for the Sparks or Cornell Dam Quadrangles of the Niobrara National Scenic River ("Niobrara") and any communication with any representative of the United States of America, National Park Service or United States Department of the Interior (collectively "NPS") regarding same; and

> 2.      Any document (including any email) or computer file provided to or
>         received from NPS purporting to relate to property owned or
>         managed by Lee M. Simmons or his family adjacent to or near the
>         Niobrara.

(Filing No. 68-1, at CM/ECF p. 3).

On April 17, 2015, the defendants produced to Plaintiff's counsel a disc including "some of the final GIS shape files for the ORVs and final boundary . . . for the Niobrara National Scenic River final boundary and ORVs in the Sparks and Cornell Dam quadrants. . . . This disc did not contain GIS shape files for paleontological sites, roads or the river channel," and "did not contain the commercial Arc View software" to actually view the computer imagery stored on the disc. (Filing No. 84-6, at CM/ECF p. 5). Arc View is a commercially licensed software product.

In response to Plaintiff's motion to compel, the government filed the affidavits of Ernest Quintana, David Given, and Paul Hedren—all former NPS personnel and the decision-makers for the Niobrara NSR boundaries—each of whom state they did not review electronic maps of Plaintiff's land when assessing and finalizing the location of the Niobrara NSR boundary. (Filing Nos. 84-1 to 84-5). That is, they did not review the GIS shape files directly: They reviewed the maps created using the GIS shape files. Those maps are included in the administrative record.

The affidavits of Stephen G. Thede (Superintendent for the Niobrara NSR since December, 2013), and Jeffrey Shane Compton, (NPS' Associate Director-Information Resources), state the government has searched the emails and archived emails of Hedren, Phil Campbell, Stuart Schneider, Darryn Witt, Stephen Wilson, and Wayne Werkmeister, and for the January 1, 2002, through March 26, 2007 time frame, no emails with

"Simmons," "Lee Simmons," "Carl Simmons," or "Simmons family" were located. (Filing Nos. 84-4 & 84-5).

But Carmen Thomson's filed included twenty emails with those search terms, dating from October 21, 2002 and July 30, 2004, (Filing No. 84-5, at CM/ECF p. 6), and 240 files relevant to the Niobrara NSR project. (Filing No. 84-4, at CM/ECF p. 3-4). As of June 16, 2015, the government still had not reviewed these emails to determine if they are privileged, relevant, or responsive to Plaintiff's Rule 30(b)(6) deposition notice and his discovery demands. (Filing No. 89).

As to paper files of the Niobrara NSR project, the government states there are "4 file cabinets containing approximately 20 Linear Feet of records located in the park office in Valentine that contain hardcopy records from the present going back to 1991 including 2002-2007 files," and "another 27 Linear Feet of similarly filed archival records dating back to 1991 which are located in the Midwest Regional Office in Omaha, Nebraska." (Filing No. 84-4, at CM/ECF p. 4).

Finally, regarding documents "intentionally removed or rejected by Defendants in connection with actions taken in compiling the Administrative Record in this action," (Filing No. 65), the plaintiff has not deposed Sändra Washington, who certified the record as complete. But after the motion to compel was filed, the government identified not only Washington, but also former Resource Management Specialist Pamela Sprenkle and Administrative Officer Laurie Wise as potential witnesses as to the process and completeness of the administrative record. (Filing No. 88-2).

On May 19, 2015, in reply to its motion for protective order, the government filed the affidavit of Roger Johnson, NPS Chief Cartographer, for the Niobrara "tract" files

who possesses information about private ownership of property on the Niobrara.  (Filing No. 86-1).

In total, the government has disclosed the identity of over 20 people personally involved in the Niobrara NSR project.  The plaintiff can depose only five total witnesses, and he is operating from an informational deficit when deciding who, other than Hedren, to depose.  Plaintiff wanted more information from the government before choosing who to depose.  And those witnesses must have access to relevant documents so they can answer the plaintiff's questions.  To that end, Plaintiff served 30(b)(6) deposition notices with document production requests on Schemmer Associates and on the defendants.

Having reviewed the totality of information from the government, the plaintiff is now limiting his discovery demands as follows:

(1)     Plaintiff demands production of the Thomsen Records and Emails: the 240 emails about the Niobrara NSR project and the 20 emails that mention "Simmons."

(2)     Plaintiff demands production of the CD of GIS shape files prepared by Schemmer.

(3)     Plaintiff will depose Thomsen or Schemmer (or both) while these witnesses have access to a computer that can load and display the GIS files at issue.

(4)     Of the three identified, the plaintiff will depose the person most knowledgeable, as chosen by the government, concerning whether any document relating to Simmons was removed from the Administrative Record when compiling it for this action.

Plaintiff's counsel states:

10

> If the Court allows the miniscule number of documents already assembled by Defendants and Schemmer to be produced, allows Simmons to take the deposition of Thomsen (and possibly Schemmer) with assistance of a computer displaying the GIS files, and requires Defendants to interview each of three people they identified as having compiled the Administrative Record and select the individual among them with the most knowledge of whether any documents were removed from the Administrative Record, the essence of the disputes between the parties will be resolved.

(Filing No. 87, at CM/ECF p. 3).

Having thoroughly considered the record in its entirely, and recognizing the limitations on discovery in such cases as more fully outlined in Judge Kopf's order, (Filing No. 45), the undersigned magistrate judge finds the plaintiff's proposal is, for the most part, reasonable.   While the government believes the requested document production exceeds the scope allowed by Judge Kopf's order, the order does not state that depositions are limited to testimony only.   Moreover, as a practical matter, government witnesses who have not been involved in this case for eight years are not likely to remember much without reviewing documents.

As to Thomson's emails, the court will order the government to produce the 20 emails that mention "Simmons." Judge Kopf's Order was aimed at permitting discovery regarding the mindset and motives of NPS officials during the time period when they were considering and placing Niobrara boundary lines on Simmons' property.   These emails may shed light on that mindset, and absent the emails, no witness will reliably remember the facts including within those emails.   But as to the 240 emails discussing the Niobrara NSR project, there is no showing that these emails were relied upon in making the boundary decisions at issue or address the purpose of permitting limited discovery on judicial review.   The government need not produce these 240 emails.

11

The GIS shape files may reveal whether the Niobrara NSR boundary line is based on ORVs located on Plaintiff's land or bias against Plaintiff.  Schemmer has a CD of those files ready to deliver.  And Plaintiff has a disc of those files as it relates to the plaintiff's land.  The plaintiff has neither the software nor the training to view and use the GIS data files on the disc produced by the government.  As suggested by Plaintiff, a reasonable solution is to depose Thomsen or Schemmer Associates while the deponent has access to a computer loaded with correct software and able to display the GIS files during the deposition.  The government will cooperate in carrying out this solution.

Finally, the Defendants will determine which of the three people identified as having compiled the Administrative Record have the most knowledge about whether any document was removed from the Administrative Record when it was compiled.  The person chosen by the government will be made available for deposition along with the document(s) removed.  No other document production, by written discovery or via subpoena duces tecum, will be allowed.

Finally, the government moves to supplement its brief.  But it's actually trying to supplement the evidentiary record.  At this stage of the parties' discovery disputes, that motion will be denied.

Accordingly,

IT IS ORDERED:

1)    Plaintiff's Motion to Complete or Supplement Record, (Filing No. 65), and Defendants' Motion for Protective Order, (Filing No. 76), are granted in part and denied in part as set forth in this order.

2)    Plaintiff's Motion to Supplement Defendant's Brief, (Filing No. 89), is denied.

3) Discovery shall be completed on or before October 15, 2015.

4) Absent any threshold showing of bad faith or bias and/or that the administrative record is incomplete or needs to be supplemented, this case shall be resolved wholly on review of the administrative record.

    a. Plaintiff shall file his brief by November 16, 2015;

    b. Defendants shall file a brief by December 16, 2015;

    c. Plaintiff may file a reply brief by January 8, 2016;

    d. This case shall be ripe for decision on January 11, 2016.

September 1, 2015.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

13